IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GEORGE RAY DAVIS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | No. 4:22-CV-60-O |
| BOBBY LUMPKIN, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

The matters before the Court are (1) Davis's petition, filed January 24, 2022 (ECF No. 1); (2) Respondent's Answer, filed July 28, 2022 (ECF No. 14); and (3) Davis's Reply brief, filed September 7, 2022 (ECF No. 19). For the reasons set forth below, Davis is not entitled to federal habeas corpus relief or a Certificate of Appealability from this court.

## I. BACKGROUND

### A. Indictment

On May 10, 2017, a Hood County grand jury indicted petitioner George Ray Davis on two counts of indecency with a child.[1]

---

[1] A copy of Davis's indictment appears at pages 7-9 of ECF No. 16-3. The indictment charged Davis with (1) on or about July 23, 2004 intentionally and knowingly employing, authorizing, or inducing a child younger than eighteen (BD21) to engage in sexual performance involving the child's hand contacting Davis's male sexual organ); and (2) on or about July 23, 2004, with intent to arouse or gratify Davis's sexual desire, engaging in sexual contact by touching the female sexual organ of BD21, a child younger than seventeen and not the spouse of Davis. Three enhancement paragraphs alleged Davis had previously been convicted in Dallas County on two charges of burglary of a building and one charge of burglary of a habitation (all in 1989).

**B. Trial**

The guilt-innocence phase of Davis's criminal trial commenced on January 16, 2019. The prosecution offered testimony from the complainant, who by then was a twenty-three-year-old college student, who detailed a lengthy history of sexual abuse by Davis beginning around age six when she lived with Davis in Columbia, South America, and continuing after she moved with Davis to Granbury, Texas, and still later to Katy, Texas.[2]  The jury also heard testimony from the complainant's older half-sister, who testified she lived down the street from the complainant and they attended the same school when they were both growing up in Granbury, Texas.[3]

_____

[2] The complainant, who is Davis's biological daughter, will be identified throughout this opinion using the pseudonym "BD21" which was how she was identified in the indictment.  BD21 detailed recuring sexual abuse she sustained at Davis's hands over an extended period through her childhood and adolescence.  More specifically, BD21 testified without contradiction at trial that (1) Davis first abused her in Columbia (by touching her female sexual organ with his finger) when she was about seven years old; (2) the abuse was recurring while she lived in Columbia; (3) after her family moved to Granbury, Texas, Davis's abuse of her continued, became more frequent (multiple times a week), and expanded beyond Davis touching her female sexual organ to include Davis requesting "foot massages" from BD21 which were euphemisms  for Davis holding BD21's hand and having her touch his male sexual organ; (4) Davis often asked BD21 if there were things she wanted and gave her gifts when she performed as he directed; (5) her family moved to Katy, Texas when she was in middle school; (6) in Katy, the sexual abuse she suffered became more frequent and expanded to include Davis penetrating her female sexual organ with his finger and Davis touching her female sexual organ with his mouth; (7) BD21 returned to Columbia with her father and step-mother for about a year when she was in middle school; (8) her family then moved back to the United States; (9) BD21's sexual abuse by Davis continued until she moved out of Davis's home and into her biological mother's home in Monroe, Louisiana when BD21 was in sixth grade; (10) after she moved in with her biological mother, BD21 continued to visit Davis's home and her younger half-sister on occasion but Davis no longer abused BD21; (11) when she was eighteen, her biological mother moved back to Texas but left BD21 and an older sister in Monroe, Louisiana; (12) after living briefly with her older sister, BD21 moved in with a family she met through her church; (13) she first told her biological mother about Davis's abuse of her when BD21 left Davis's home but no adult contacted law enforcement authorities at that time; (14) she began attending a church youth group in Monroe when she was in high school; (15) there she met a Sunday School teacher who was a nurse; (16) eventually, BD21 confessed to her Sunday School teacher that she had been sexually abused as a child by her father; (17) her Sunday School teacher attempted to help BD21 reach out to local law enforcement officials in Louisiana but those efforts were initially unsuccessful; (18) after obtaining counseling with the help of her Sunday School teacher and graduating from high school, BD21 again reached out to law enforcement officials in Louisiana and in Katy, Texas with little success; (1) finally, at the encouragement of her counselor and with the help of the family with whom she was then living, BD21 was able to make contact with a child abuse investigator in Hood County, Texas, who undertook an investigation into the sexual abuse BD21 sustained from Davi when BD21 was a child living with Davis and her step-mother in Pecan Plantation in Hood County about a decade before.  Testimony of BD21, 3 R.R. Trial (ECF No. 16-6) 12-54.

[3] BD21's older half-sister (they shared a biological mother but not a father) testified that (1) Davis sexual abused her when she was in eighth grade (when BD21 was also in middle school) both by rubbing his male sexual organ against her back and by forcing her hand not touch his male sexual organ; (2) when she reported Davis's abuse

The Monroe, Louisiana Sunday School teacher and nurse to whom the then-seventeen-year-old complainant confessed her history of sexual abuse by her father testified extensively about (1) the circumstances in which she met the complainant; (2) the complainant's emotionally jarring confession during a series of driving lessons the witness gave the complainant when the complainant was in high school; (3) her efforts to find a positive home environment for the complainant after the complainant's biological mother left Louisiana shortly after the complainant turned eighteen; (4) her family's efforts to move to a larger home so they could furnish a home for the complainant; (5) her efforts to get the complainant into counseling to help the complainant deal with a host of emotional problems arising from her lengthy history of childhood sexual abuse; (6) her efforts over a period of several years to assist the complainant in reaching out to law enforcement agencies in Louisiana and Texas; and (7) the complainant's expressions of suspicion that her younger half-sister might be suffering from the same type of abuse the complainant suffered at Davis's hands.[4]

The former Hood County Crimes Against Children Task Force forensic interviewer and investigator who took the complainant's report of her history of childhood sexual abuse testified that both the complainant and the complainant's older half-sister reported they had been sexually

_____

of her to her mother, nothing was done for fear that BD21 and her younger half-sister would be left without a father; (3) BD21 confessed to her that BD21 had been sexually abused by her father (Davis). Testimony of A_M, 3 R.R. Trial (ECF No. 16-6) 55-62.

[4] Testimony of Melanie Ott, 3 R.R. Trial (ECF No. 16-6) 63-94.

abused by Davis and both gave strikingly similar accounts of how Davis sexually abused them as children.[5]

The second day of the guilt-innocence phase of trial, January 17, 2019, Davis and all of his family members who had been present the day before to testify as defense witnesses failed to re-appear.[6]  Davis's trial counsel unsuccessfully moved twice for a mistrial, citing the defendant's absence and the absence of all the defense witnesses.[7]  The trial court denied the defense requests for mistrial.

The prosecution called the sexual assault nurse examiner ("SANE") who had examined the complainant, who testified that (1) she took a medical history from the complainant which included a lengthy history of childhood sexual abuse by Davis; (2) she obtained consent from the complainant for the examination and all necessary waivers; (3) because of the remote history of the complainant's abuse (i.e., more than 120 hours), she did not perform a physical examination of the complainant; and (4) the complainant's reports of the pain she experienced during Davis's

---

[5] Testimony of Ashley Briley, 3 R.R. Trial (ECF No. 16-6) 95-114.

[6] Davis was subject to a pair of appearance bonds but allowed to remain free overnight.  Following his failure to appear at the third day of his trial, Davis was apprehended in Louisiana, indicted for bail jumping, and convicted of that offense.  The Texas Court of Appeals' decision affirming Davis's conviction for that separate offense appears at *Davis v. State*, 07-20-00047-CR, 2020 WL 5415397 (Tex. App. – Amarillo Sept. 8, 2020), *no pet.*  The state appellate court found there was no arguable basis in the record to support Davis's contention that his decision to choose to abscond from indecency with a child trial was justified by his trial counsel's alleged suggestion that Davis flee the jurisdiction.

[7] 4 R.R. Trial (ECF No. 16-7) 5 & 19.

touching of her female sexual organ were consistent with the absence of estrogen in a pre-puberty female body.[8]  The complainant's SANE report was admitted into evidence without objection.[9]

On January 17, 2019, the jury returned its verdict in less than twenty minutes, finding Davis guilty of the second count of the indictment (the only count submitted to the jury at the conclusion of trial).[10]

At the punishment phase of trial, held later on January 17, 2019, the prosecution presented testimony from a Hood County District Attorney's Office investigator, who was also a fingerprint analyst, that the fingerprints he had obtained from Davis matched the fingerprints on a pen packet that was admitted into evidence and which showed that Davis had previously been convicted in Dallas County (in 1989) on two charges of burglary of a building and one charge of burglary of a habitation.[11]  After both parties rested and presented their closing arguments, the trial court found all three of the enhancement paragraphs of Davis's indictment to be true and imposed sentence at life imprisonment plus a monetary fine.[12]

Davis was formally sentenced on April 17, 2019, after the complainant gave a victim impact statement in which she (1) detailed the emotional And psychological  difficulties she had

_____

[8] Testimony of Melissa Cahill, 4 R.R. Trial (ECF No.16-7) 6-19.

[9] 4 R.R. Trial (ECF No. 16-7) 11.

[10] 4 R.R. Trial (ECF No. 16-7) 36-37.  Davis's jury retired to deliberate at 9:55 a.m. and returned its unanimous guilty verdict at 9:55 a.m. the same date.  *Id.*  The jury's verdict form appears at page 26 of the Clerk's Record (ECF No. 16-3).  The trial court subsequently dismissed the first count of the indictment against Davis. *See* Clerk's Record at page 30 (ECF No. 16-3).

[11] Testimony of Robert Young, 5 R.R. Trial (ECF No. 16-8) 6-13.

[12] 5 R.R. Trial (ECF No. 16-8) 14.  Copies of the judgment of conviction appear at pages 32-33 & 36-38 of the Clerk's Record (ECF No. 16-3).

endured as a result of Davis's abuse of her as a child; (2) emphasized that she still loved her father despite the pain and emotional trauma he inflicted on her and the anger she felt for what he had done to her as a child; and (3) asserted that she believed Davis's confinement for life was necessary to protect her younger sibling from abuse similar to that which she had sustained.[13]

## C.  Motions for New Trial

Davis filed a pair of motions for new trial.[14]  The trial court held an evidentiary hearing on Davis's motions on June 11, 2019.  Davis presented testimony during that hearing from himself, as well as his nephew Matthew Davis, that (1) Davis's trial counsel informed Davis the evening of the first day of trial that, based on the proceedings which had taken place earlier that day she was not offering legal advice but, if it were her, she would have fled the country; (2) if Davis failed to appear at trial the next day, she would seek a mistrial; and (3) based on his trial counsel's "advice," Davis decided he would not appear at trial the following day but would, instead, seek a different defense counsel.[15]  The trial court denied Davis's motion for new trial.[16]

---

[13] 6 R.R. Trial (ECF No. 16-9) 5-10.

[14] Davis's motions for new trial appear at pages 44-45 & 49-5- of the Clerk's Record (ECF No. 16-3).

[15] Testimony of Matthew Davis, 7 R.R. Trial (ECF No. 16-10) 4-12; Testimony of George Ray Davis, 7 R.R. Trial (ECF No. 16-10) 13-21.  On cross-examination, both Davis and his nephew admitted that Davis trial counsel made clear that she was *not* offering Davis legal advice that he abscond from the trial and the country.  Testimony of Mathew Davis, 7 R.R. Trial (ECF No. 16-10) 10-12; Testimony of George Ray Davis, 7 R.R. Trial (ECF No. 16-10) 21.  Davis also admitted on cross-examination that (1) he was subject to two appearance bonds and (2) his reason for not appearing for trial the second day was his desire to obtain a mistrial and new counsel.  Testimony of George Ray Davis, 7 R.R. Trial (ECF No. 16-10) 21.

[16] 7 R.R. Trial (ECF No. 16-10) 23.  The trial court's order denying Davis's motion for new trial appears at page 52 of the Clerk's Record (ECF No. 16-3).

## D. Direct Appeal

Davis appealed his sentence and conviction.[17]  Davis's appellate counsel argued in his appellant's brief that (1) the trial court erred in denying Davis's motions for mistrial and motion for new trial and (2) the trial court erred in admitting outcry testimony without proper foundation.[18] In an unpublished opinion the Texas Seventh Court of Appeals affirmed Davis's conviction and sentence.  *Davis v. State*, 07-19-00228-CR, 2020 WL 465855 (Tex. App. – Amarillo Jan. 28, 2020), *pet. ref'd*.[19]  The Court of Appeals concluded (1) the state trial court implicitly found Davis's absence from trial was voluntary, under which circumstances the trial court was authorized under Article 33.03 of the Texas Code of Criminal Procedure to proceed with Davis's trial in the defendant's absence and (2) Davis waived any complaint about the admission of the outcry testimony in question by not objecting again when the complainant's outcry statement was again mentioned by a witness and by not obtaining a running objection after his initial objection to the statement's admission was overruled.  *Id.*  The Texas Court of Criminal Appeals subsequently denied Davis's petition for discretionary review.  PDR no. 0150-20 (Tex. Crim. App. June 17, 2020).

---

[17] Davis's Notice of Appeal appears at page 53 of the Clerk's Record (ECF No. 16-3).

[18] Attorney Bryan Bufkin filed Davis's Appellant's Brief on September 9, 2019.  Davis's Appellant's Brief appears at ECF No.  16-12.

[19] A copy of the Amarillo Court of Appeals' opinion affirming Davis's conviction and sentence appears at ECF No. 16-14.

**E.  State Habeas Proceeding**

Davis filed a pro se application for state habeas corpus relief on August 17, 2021, urging sixteen grounds for relief.[20]   On September 2, 2021, the state trial court issued an Order recommending denial of Davis's state habeas application.   (ECF no. 16-26, at p. 110).   On November 10, 2021, the Texas Court of Criminal Appeals denied Davis's state habeas application without written order.  *Ex parte Davis,* WR-93,097-01 (Tex. Crim. App. Nov. 10, 2021).   (ECF no. 16-21).

---

[20] Davis's state habeas corpus application appears at ECF No. 16-26.  As grounds for relief, Davis argued that (1) his state trial counsel rendered ineffective assistance by (a) advising Davis not to appear after the first day of trial testimony (claim 1); (b) failing to investigate the case, present a defense, and locate witnesses (claim 2); (c) challenge two jurors for cause (claim 3); (d) failing to request a hearing on the admissibility of testimony about extraneous offenses, i.e., Davis's acts of indecency with another child (claim 5); (e) failing to object to the testimony of the SANE (claim 7); (f) failing to request a hearing to determine the validity of the hearsay outcry testimony of Melanie Ott (claim 8); (g) changing Davis's election for sentencing from jury to trial court sentencing (claim 13); and (h) failing to object to the testimony of an extraneous offense after the prosecution failed to give proper notice of same (claim 14); (2) his conviction violates ex post facto principles because the trial court admitted testimony of Davis's acts of indecency with another child pursuant to an amendment to Texas evidentiary standards which became effective after the date of Davis's offense (claim 4); (3) the state failed to furnish notice to the defense of its intent to offer third-party testimony in violation of Article 38,37, Section 3 of the Texas Code of Criminal Procedure (claim 6); (4) the prosecution engaged in improper jury argument by arguing Davis had molested children in his home for years (claim 9); (5) the enhancement of Davis's sentence was improper because all three of his prior convictions became final on the same date (claim 10); (6) the trial court violated Article 42.03(1) of the Tex. Code Crim. Proc. by pronouncing sentence *after* hearing the complainant's victim-impact testimony and making that testimony a part of the record (claim11); (7) the prosecution violated due process principles by failing to give notice of its intent to admit extraneous offense evidence at trial (claim 12); (8) the trial court lacked jurisdiction over Davis and his offense (claim 15); and (9) the trial court violated due process principles by shifting the burden of proof at trial (claim 16).
    Davis attached to his state habeas application and brief in support a series of affidavits and his own sworn statement purporting to assert what each of the affiants would have testified had they been called to do so at Davis's trial.  These appear at pages 91-105 of ECF No. 16-26.  The affidavits of Keith Clements (a friend of Davis), Astrid Davis (Davis's spouse), Matthew Davis (Davis's nephew), Martin Davis (Davis's brother), and Lutricia Davis (Davis's mother) include anecdotes about incidents in which they witnessed the complainant behaving normally or in a manner that raised questions in their minds about her credibility generally; but none of these witnesses (other than Davis himself)  asserted they possessed any personal knowledge about the incidents of sexual abuse or indecency which the complainant described in detail in her trial testimony.

**F. Proceedings in this Court**

Davis filed his federal habeas corpus petition in this Court on January 24, 2022, asserting fifteen claims for relief (ECF No. 1).[21]  The Respondent filed his Answer on July 28, 2022 (ECF No. 14), asserting in part that (1) Davis's ex post facto claim is foreclosed by the non-retroactivity principle announced in *Teague v. Lane*, 489 U.S. 288 (1989); (2) the extraneous offense testimony admitted at Davis's trial was admissible under well-settled exceptions to the Hearsay Rule; (3) Davis's assertions of alleged violations of state law do not warrant federal habeas relief; and (4) Davis's jurisdictional challenge to the trial court's exercise of jurisdiction over Davis's charge is procedurally defaulted because Davis raised no timely objection to the trial court's jurisdiction and failed to raise that claim on direct appeal.  Davis filed his Reply brief on September 7, 2022 (ECF No. 19).

---

[21] As grounds for relief, Davis argues that (1) his trial counsel rendered ineffective assistance by advising Davis to absent himself from trial; (2) his trial counsel rendered ineffective assistance by failing to investigate the case against Davis, failing to provide a defense, and failing to call witnesses; (3) his trial counsel rendered ineffective assistance by failing to challenge three members of the jury venire for cause based on bias; (4) his conviction violates ex post facto principles because a change in Texas evidentiary rules which took place after the date of his offense but prior to trial allowed the prosecution to admit testimony from third-party witnesses regarding Davis's acts of sexual abuse perpetrated on other individuals besides the complainant; (5) his trial counsel rendered ineffective assistance by failing to request a hearing to determine the admissibility of testimony regarding extraneous offenses, i.e., Davis's acts of sexual abuse perpetrated on other individuals besides the complainant; (6) the prosecution failed to provide the defense with notice of its intent to present evidence of extraneous offenses as required by state statute; (7) his trial counsel rendered ineffective assistance by failing to object to the testimony of the SANE nurse examiner; (8) his trial counsel rendered ineffective assistance by failing to request a hearing on the admissibility of the testimony of outcry witness Melanie Ott; (9) the prosecution engaged in improper jury argument; (10) his sentence was improperly enhanced to that of a first degree felony offense because his prior convictions were too old and remote to justify enhanced sentence under state law; (11) the trial court erred and violated state law when it imposed sentence after allowing the complainant to give victim impact testimony that was recorded and made a part of the record on appeal; (12) the prosecution failed to furnish the defense with notice required under state law regarding its intent present testimony of extraneous offenses; (13) his trial counsel rendered ineffective assistance by changing Davis's election of jury sentencing to allow sentencing by the trial judge; (14) his trial counsel rendered ineffective assistance by failing to object to the admission of extraneous offense testimony; and (15) the state trial court lacked jurisdiction over the offense and evidence of extraneous offenses.

On September 13, 2022, Davis filed a motion for stay (ECF No. 20). On June 9, 2023, this Court denied Davis's stay motion (ECF No. 28). On June 30, 2023, Davis filed an interlocutory appeal from this Court's denial of his stay motion (ECF No. 29). In an Order issued August 22, 2023, this Court stayed all proceedings in this cause pending disposition of Davis's interlocutory appeal by the Fifth Circuit (ECF No. 34). On September 15, 2023, the Fifth Circuit issued an opinion dismissing Davis's interlocutory appeal for want of jurisdiction. *Davis v. Lumpkin*, no. 23-10693, 2023 WL 5995500 (5th Cir. Sept. 15, 2023).

## II. STANDARD OF REVIEW

Because Davis filed this federal habeas corpus action after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), this Court's review of his claims for federal habeas corpus relief is governed by AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

The legislative history of the AEDPA indicates that it was intended as a limitation upon the scope of federal habeas review, not as an enactment intended to broaden the scope of federal habeas review or to reconfigure federal habeas courts as super state appellate courts. One of the principal purposes of the AEDPA was to reduce delays in the execution of state and federal criminal sentences, especially capital sentences. *Ryan v. Valencia Gonzales*, 568 U.S. 57, 76 (2013); *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007); *Rhines v. Weber*, 544 U.S. 269, 276 (2005). Another purpose of the AEDPA was to encourage litigants to pursue claims in state court prior to seeking federal collateral review. *Duncan v. Walker*, 533 U.S. 167, 181 (2001); *see also Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (the AEDPA imposes the burden on a petitioner to litigate to the maximum extent possible, including fairly presenting all available evidence supporting, his claims in state court). The AEDPA was also intended to prevent piecemeal litigation and gamesmanship. *Maywood v. Patterson*, 561 U.S. 320, 334 (2010). Thus,

under the AEDPA, federal habeas review of claims is limited to the record that was before the state court that adjudicated the prisoner's claims on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). "The AEDPA statute of limitations promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." *Day v. McDonough*, 547 U.S. 198, 205-06 (2006). Collectively, the provisions of the AEDPA further the principles of comity, finality, and federalism. *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007); *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Under the AEDPA standard of review, this Court cannot grant Davis federal habeas corpus relief in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Davenport*, 596 U.S. 118, 135-36 (2022); *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. § 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that

contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'").  A state court's failure to cite Supreme Court authority does not, per se, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'"  *Mitchell*, 540 U.S. at 16.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case.  *Brown*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of . . . clearly established Federal law,' § 2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins*, 539 U.S. at 520-21.  The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one.  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."); *Wiggins*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner").  "Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court 'must

show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter,* 562 U.S. 86, 101 (2011)).

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions existing at the time of the relevant state-court decision establish those principles.  *Brown*, 596 U.S. at 136 ("It is not enough that the state court decision offends lower federal court precedents.  This Court's dicta cannot supply a ground for relief." (citation omitted)); *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

AEDPA also significantly restricts the scope of federal habeas review of state court fact findings.  Section 2254(d)(2) of Title 28, United States Code, provides federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Wood v. Allen*, 558 U.S. 290, 301(2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Williams v. Taylor*, 529 U.S. at 410 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.").  Even if reasonable minds reviewing the record might disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding), on habeas review, this does not suffice to supersede the trial court's factual determination.  *Wood*, 558 U.S. at 301; *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

In addition, § 2254(e)(1) provides that a federal habeas petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *Schriro*, 550 U.S. at 473-74 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice*, 546 U.S. 333, 338-39 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005) ("[W]e presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e)(1).  It remains unclear at this juncture whether § 2254(e)(1) applies in every case presenting a challenge to a state court's factual findings under § 2254(d)(2). *See Wood*, 558 U.S. at 300-01 (choosing not to resolve the issue of § 2254(e)(1)'s possible application to all challenges to a state court's factual findings); *Rice*, 546 U.S. at 339 (likewise refusing to resolve the Circuit split regarding the application of § 2254(e)(1)).

The deference to which state-court factual findings are entitled under AEDPA does not imply an abandonment or abdication of federal judicial review.  *See Miller-El*, 545 U.S. at 240 (the standard is "demanding but not insatiable"); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.  Deference does not by definition preclude relief.").

Before a federal court may grant a state prisoner habeas corpus relief on a claim that was adjudicated on the merits in state court, the petitioner must not only satisfy the requirements of AEDPA but must also convince the court that the error committed by the state court during its adjudication of the petitioner's criminal case was not harmless within the meaning of *Brecht v.*

*Abrahamson*, 507 U.S. 619 (1993).  *Brown v. Davenport*, 596 U.S. 118, 122 (2022).  In *Shinn v. Jenkins*, 596 U.S. 366, 378 (2022), the Supreme Court held that when a federal habeas petitioner has properly exhausted state court remedies on a federal constitutional claim through direct appeal or a state habeas corpus proceeding, federal habeas review of that claim is circumscribed in that the federal court is limited to reviewing the record before the state court that resolved the claim on the merits and the petitioner must establish that, under Supreme Court precedent, no fair-minded jurist could have reached the same result as the state court.  *See also Shoop v. Twyford*, 596 U.S. 811, 819-20 (2022) (where a petitioner failed to develop the factual bases for his claims in state court, he is entitled to present new evidence in support of his claims before the federal habeas court only in the two limited circumstances outlined in Section 2254(e)(2)); *Shinn*, 596 U.S. at 371 (holding the same).

Absent a showing that there is an absence of available state corrective process or that circumstances exist that render such process ineffective to protect the rights of a petitioner, this Court is statutorily precluded from granting federal habeas corpus relief on any claim that has not been fairly presented to the state courts.  *Davila v. Davis*, 582 U.S. 521, 527 (2017) (the exhaustion requirement is designed to avoid the unseemly result of a federal court upsetting a state court conviction without first affording the state courts an opportunity to correct a constitutional violation); 28 U.S.C. § 2254(b)(1).  Nonetheless, this Court is authorized to deny federal habeas relief on the merits notwithstanding a petitioner's failure to exhaust available state court remedies.  *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (a federal habeas court abuses its discretion if it grants a petitioner a stay when his unexhausted claims are plainly meritless); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

If the state courts failed to adjudicate a claim on the merits that Davis now presents to this Court (such as claims (1) the state courts summarily dismissed under the Texas writ-abuse statute or Texas rules of procedural default or (2) which Davis failed to fairly present to the state courts), then this Court's review of the un-adjudicated claim is de novo. *See Porter v. McCollum*, 558 U.S. 30, 39 (2009) (de novo review of the allegedly deficient performance of petitioner's trial counsel was necessary because the state court failed to address the prejudice prong of *Strickland*); *Rompilla v. Beard*, 545 U. S. 374, 390 (2005) (de novo review of the prejudice prong of *Strickland* was required where the state court rested its rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins*, 539 U.S. at 534 (same).

### III. STATE LAW CLAIMS

#### A.  The Claims

In his sixth ground for federal habeas relief, Davis argues the prosecution failed to provide the defense with notice of its intent to use testimony of a third party in violation of Article 38.37, Section 3 of the Texas Code of Criminal Procedure ("TCCP").  In his tenth claim for federal habeas relief, Davis argues his sentence was improperly enhanced in violation of Section 12.42(d) of the Texas Penal Code.  In his eleventh claim for federal habeas relief, Davis argues his state trial court violated Article 42.03 of the TCCP by imposing sentence after allowing the complainant to read a victim impact statement on the record.  In his twelfth claim for federal habeas relief, Davis argues the prosecution violated Article 38.37, Section 2 of the TCCP by failing to give the defense notice of its intent to use extraneous offense evidence.

16

**B. State Court Disposition**

Davis asserted the same legal and factual arguments as his sixth and tenth through twelfth claims in his state habeas corpus application. The TCCA denied all four claims on the merits when it denied Davis's state habeas application.

**C. Clearly Established Federal Law**

Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (recognizing that federal habeas relief will not issue for errors of state law); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (holding a federal court may not issue the writ on the basis of a perceived error of state law). In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does *not* sit as a super-state appellate court. *Estelle v. McGuire*, 502 U.S. at 67-68; *Lewis v. Jeffers*, 497 U.S. at 780; *Pulley v. Harris*, 465 U.S. at 41.

When a federal district court reviews a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).

**D. Analysis**

Respondent correctly points out that Davis's complaints in his sixth and tenth through twelfth claims for federal habeas relief about alleged violations of state statutory law do not furnish

17

an arguable basis for federal habeas relief. Contrary to the erroneous assumption underlying Davis's sixth and tenth through twelfth claims herein, the alleged violations of various state statutes identified by Davis do not furnish a basis for federal habeas relief. *Estelle*, 502 U.S. at 67-68.

Furthermore, it is well-settled that a state court's interpretation of state law binds a federal habeas court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Garza v. Stephens*, 738 F.3d 669, 677 (5th Cir. 2013) (holding a Texas habeas court's interpretation of evidentiary rules was binding in a federal habeas case); *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009) (a state court's interpretation of state law binds a federal court sitting in habeas corpus). The state court rejected each of Davis's complaints about alleged violations of Texas law on the merits when it *denied*, rather than dismissed, his state habeas corpus application. In so doing, the TCCA implicitly rejected Davis's interpretations of applicable state law contained in his sixth and tenth through twelfth claims herein. The TCCA's implicit rejection of those state law arguments binds this federal habeas court.

Thus, the TCCA's denials on the merits of Davis's sixth and tenth through twelfth claims for state habeas relief (asserting these same legal and factual arguments) were neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Davis's trial, state direct appeal, and state habeas proceedings. Under the AEDPA, Davis's sixth and tenth through twelfth claims herein do not warrant federal habeas corpus relief.

18

## IV. IMPROPER PROSECUTORIAL JURY ARGUMENT

### A. The Claim

In his ninth claim for federal habeas relief, Davis argues the prosecution engaged in improper closing jury argument at the guilt-innocence phase of trial. More specifically, Davis argues the prosecution improperly suggested Davis spent years molesting small children inside his home. Davis contends this assertion was improper because the evidence supporting same came from less than credible prosecution witnesses.

### B. State Court Disposition

Davis included the same arguments as his ninth claim for state habeas relief in his state habeas application. The TCCA denied same on the merits when it denied Davis's state habeas application.

### C. Clearly Established Federal Law

Improper jury argument by a prosecutor furnishes a sufficient basis for federal habeas relief only if the prosecutor's improper comments are so prejudicial that they render the trial fundamentally unfair. *Romano v. Oklahoma*, 512 U.S. 1, 13 (1994) (citing *Darden v. Wainwright*, 377 U.S. 148, 178-81 (1986)); *Hughes v. Quarterman*, 530 F.3d 336, 347 (5th Cir. 2008); *Harris v. Cockrell*, 313 F.3d 238, 245 (5th Cir. 2002).

### D. Analysis

Under Texas law, proper prosecutorial jury argument takes four forms: (1) summation of the evidence; (2) reasonable inference or deduction from the evidence; (3) response or rebuttal to the arguments of the defense; and (4) pleas for law enforcement. *Hughes*, 530 F.3d at 347; *Ward v. Dretke*, 420 F.3d 479, 497 (5th Cir. 2005); *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019).

Contrary to Davis's arguments, the prosecution's suggestion that Davis had sexually abused small children in his home for years was a clearly permissible summation of the testimony furnished at trial by the complainant and her older half-sister. As explained above in Section I.B., there was testimony from multiple witnesses that Davis had sexually abused at least two small children at different times inside his residence in Granbury, Texas. Thus, the prosecutor's jury argument was also proper because it constituted a reasonable inference from the testimony before the jury at the guilt-innocence phase of trial. The state habeas court could reasonably have believed the prosecutor's jury argument in question did not render Davis's trial fundamentally unfair.

The TCCA's denial on the merits of Davis's ninth claim for state habeas relief (asserting the same legal and factual arguments Davis urges in his ninth claim for federal habeas relief) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Davis's trial, state direct appeal, and state habeas proceedings. Under the AEDPA, Davis's ninth claim herein does not warrant federal habeas corpus relief.

## V. EX POST FACTO CLAIM

### A. The Claim

In his fourth claim for federal habeas relief, Davis complains that his conviction was an improper product of an ex post facto application of Section 2(b) of Article 38.37 of the TCCP, which became effective approximately twelve years prior to his trial but several years *after* the events described by the complainant in her trial testimony.

20

## B.  State Court Disposition

Davis included the same arguments in the corresponding ground for relief in his state habeas corpus application.  The TCCA denied that claim on the merits when it denied Davis's state habeas application.

## C.  Clearly Established Federal Law

The *ex post facto* clause prohibits retroactive application of criminal statutes in four broad categories of cases: first, when the legislature makes an action done before the passage of the law, and which was innocent when done, criminal; second, when the legislature aggravates a crime, or makes it greater than it was, when committed; third, when the legislature increases the punishment for an offense committed prior to the passage of the law; and fourth, when the legislature alters the legal rules of evidence and requires less or different testimony than the law required at the time of the commission of the offense in order to convict the offender.  *Carmell v. Texas*, 529 U.S. 513, 522 (2000) (quoting *Calder v. Bull*, 3 Dall. 386, 390, 1 L.Ed. 648 (1798)).  Thus, the ex post facto clause ensures that individuals have fair warning of applicable laws and guards against vindictive legislative action.  *Peugh v. United States*, 569 U.S. 530, 544 (2013).  The clause also safeguards a fundamental fairness interest – in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life.  *Id.*

## D. Analysis

Davis argues that his acts of sexual indecency with the complaining witness took place in the 2004-06 time frame, prior to an amendment to Texas statutes in 2013 which allows prosecutors to present testimony of extraneous offenses committed by the defendant against child victims *other than* the complaining witness, more specifically Section 2(b) of Article 38.37 of the TCCP.  Prior to 2013, Article 38.37 allowed the admission of evidence of extraneous sexual offenses committed

21

against children by the defendant only when the extraneous offenses were committed against the complaining child witness. In 2013, the Texas Legislature added Section 2(b) to Article 38.37, which provides that, notwithstanding Rule 404 and 405 of the Texas Rules of Evidence (the Texas Hearsay Rule), evidence that the defendant committed a sexual offense against a child or minor may be admitted at the trial of an alleged sexual offense against any child for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant. Davis argues the admission at his trial of the testimony of the complaining witness's older half-sister (A_ M_) that Davis had sexually abused her when she was a child in a manner very similar to how the complaining witness described her own sexual abuse at Davis's hands violated the constitutional prohibition on *ex post facto* changes to rules of evidence.

In *Carmell v. Texas*, 529 U.S. 513 (2000), which was a direct appeal, not a federal habeas case in which AEDPA applied, the Supreme Court addressed an ex post facto challenge to a 1993 amendment to another Texas statute addressing sexual crimes against children. In *Carmell*, a defendant was charged with more than a dozen sexual offenses committed against the same child over a lengthy period of time. An amendment to Article 38.07 of the TCCP which took effect in 1993 (near the middle of the extended time period in which Carmell sexually abused his minor victim) eliminated a statutory requirement that in certain circumstances corroborating evidence (i.e., evidence beyond that of the victim's own testimony) was necessary to support submission of a child sexual abuse charge to a Texas jury. Four of the fifteen charges against Carmell were affected by the amendment. The Supreme Court held by a narrow five-to-four margin that application of the amended statute to the four charges in question violated the constitutional prohibition against ex post facto laws. *Carmell*, 529 U.S. at 520-34 ("The critical question for an

ex post facto violation is whether the law changes the legal consequences of acts completed before its effective date." (quoting *Weaver v. Graham*, 450 U.S. 24, 31 (1981))).  In so holding, the Supreme Court majority emphasized that the amended Article 38.07 did far more than merely alter the admissibility of evidence in a child sexual abuse case; by eliminating the requirement that a complaining witness's trial testimony be corroborated in certain circumstances, it effectively reduced the *quantity of evidence* necessary to support a conviction for the offense in question. *Carmell*, 529 U.S. at 530-34 (Texas' retrospective application of the amendment to Article 38.07 permitted petitioner to be convicted with less than the previously required quantum of evidence).

In sharp contrast to the statutory amendment at issue in *Carmell*, the 2013 amendment to Article 38.37 merely rendered evidence of extraneous child sexual abuse by a defendant admissible even if it did not involve the same child victim as the charged offense.  Thus, unlike the situation the Supreme Court addressed in *Carmell*, the 2013 amendment to Article 38.37 about which Davis complains did not alter the *quantum* of evidence necessary to sustain submission of a criminal charge to a Texas jury.  Moreover, as the Supreme Court noted in *Collins v. Youngblood*, 497 U.S. 37, 43 n.3 (1990), when discussing the fourth type of *ex post facto* violation described in *Calder*, this *ex post facto* prohibition does not preclude retroactive application of changes in the rules of evidence at criminal trials:

> As cases subsequent to *Calder* make clear, this language was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes. *Thompson v. Missouri,* 171 U.S. 380, 386–387, 18 S. Ct. 922, 924–925, 43 L. Ed. 204 (1898) (rejecting *ex post facto* challenge to retroactive application of statute making admissible handwritten documents as handwriting exemplars); *Hopt, supra,* 110 U.S., at 588–590, 4 S. Ct., at 209–210 (upholding retroactive application of statute making felons competent to testify).

Essentially, all the 2013 amendment to Article 38.37 in question did was to render competent as witnesses the child victims of a sexual predator when those witnesses appear to

testify during the trial of a defendant charged with sexually abusing a different victim (to testify about the sexual abuse the defendant wrought upon them as children). Basically, the 2013 amendment to Article 38.37 reverses the long-held Texas legislative bias against admitting the testimony of other child sexual abuse victims in trials involving a sexual predator with multiple victims. As such, the 2013 amendment merely rendered competent a category of witnesses who had previously been excluded from testifying for reasons unrelated to the credibility of their testimony. This was consistent with the Supreme Court's holding in *Hopt v. People of Utah*, 110 U.S. 574 (1884), cited with approval by the Supreme Court in its footnote in *Collins v. Youngblood* quoted above. In *Hopt* the Supreme Court held that Utah courts could allow the testimony of a convicted felon following a change in territorial law which removed a prohibition against such persons testifying in judicial proceedings. There, the Supreme Court expressly recognized that retroactive application of a change in the rules of evidence which merely expanded the range of admissible evidence (and competent witnesses) without altering the *quantity* of evidence necessary to secure a criminal conviction do not violate *ex post facto* principles. *Hopt*, 110 U.S. at 587-90.

Furthermore, as Respondent correctly points out, adoption of the new rule urged by Davis (applying the *ex post facto* prohibition to a change in evidentiary rules of this nature) is foreclosed by the nonretroactivity principle announced in *Teague v. Lane*, 489 U.S. 288 (1989). *Teague* forecloses adoption of the new principles of federal constitutional criminal procedure in federal habeas corpus proceedings. Under the holding in *Teague*, federal courts are generally barred from applying new constitutional rules of criminal procedure retroactively on collateral review. *Caspari v. Bohlen*, 510 U.S. 383, 389-90 (1994). A "new rule" for *Teague* purposes is one which was not dictated by precedent existing at the time the defendant's conviction became final. *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997) (holding a "new rule" either "breaks new ground," "imposes

24

a new obligation on the States or the Federal Government," or was not "dictated by precedent existing at the time the defendant's conviction became final"). Under this doctrine, unless reasonable jurists hearing the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to rule in his favor, a federal habeas court is barred from doing so on collateral review. *Id.*

A conviction becomes final for *Teague* purposes when either the United States Supreme Court denies a certiorari petition on the defendant's direct appeal or the time period for filing a certiorari petition expires. *Caspari*, 510 U.S. at 390. Davis's conviction became final for *Teague* purposes no later than September 17, 2020, i.e., the ninety-first day after the Texas Court of Criminal Appeals refused Davis's petition for discretionary review on direct appeal and the expiration of the time period within which Davis had to file his petition for writ of certiorari with the United States Supreme Court. *See Beard v. Banks*, 542 U.S. 406, 411-12 (2004) (recognizing a state criminal conviction ordinarily becomes final for *Teague* purposes when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for writ of certiorari has elapsed or a timely filed petition for certiorari has been denied); *Caspari*, 510 U.S. at 390 ("A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied."); Rule 13.1, Rules of the Supreme Court of the United States (providing the deadline for filing a certiorari petition is ordinarily ninety days from the date of the judgment for which certiorari review is sought).

*Teague* remains applicable after the passage of AEDPA. *See Horn v. Banks*, 536 U.S. 266, 268-72 (2002) (applying *Teague* in an AEDPA context); *Robertson v. Cockrell*, 325 F.3d 243, 255

(5th Cir. 2003) (recognizing the continued vitality of the *Teague* nonretroactivity doctrine under AEDPA).  As of the date Davis's conviction and sentence became final for *Teague* purposes no federal court had ever held that the *ex post facto* clause precluded application of § 2(b) of Article 38.37 to a trial addressing charges which took place prior to the effective date of § 2(b).

Therefore, the TCCA's rejection on the merits of Davis's fourth claim for federal habeas relief herein (which corresponds to Davis's fourth claim in his state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Davis's trial, state direct appeal, and state habeas proceedings.  Under the AEDPA, Davis's fourth claim herein does not warrant federal habeas corpus relief.

## VI. JURISDICTIONAL ISSUE

### A.  The Claim

In his fifteenth claim for federal habeas relief, Davis argues the state trial court did not have "jurisdiction" over the acts of sexual abuse he inflicted on the complaining witness in Columbia, about which the complaining witness testified at trial.  Davis offers no rational explanation, however, for why testimony about the sexual abuse he inflicted on the complaining witness in Columbia, which clearly formed the res gestae for Davis's continuing abuse of the complaining witness in Granbury, Texas in subsequent years that was charged in the indictment, was somehow outside the "jurisdiction" of the state trial court trying the indictment against Davis.

### B.  State Court Disposition

Davis included a virtually identical, equally conclusory, ground for relief as the fifteenth claim in his state habeas corpus application.  The TCCA rejected that claim on the merits when it

*denied* Davis state habeas relief.  Nothing in the record currently before this Court suggests the TCCA *dismissed* Davis's fifteenth claim for state habeas relief based upon Davis's failures to either (1) timely object at trial to the admission of the testimony in question on this ground or (2) include a point of error in his appellant's brief on direct appeal complaining about the admission of the testimony in question.  Thus, it is unnecessary to address Respondent's contention that Davis procedurally defaulted on this claim.

### C.  Clearly Established Federal Law

As explained in Section III.C. above, in the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does *not* sit as a super-state appellate court.  *Estelle*, 502 U.S. at 67-68; *Lewis*, 497 U.S. at 780; *Pulley*, 465 U.S. at 41.

Furthermore, it is well-settled that state court errors in the admission or exclusion of evidence warrant federal habeas relief only if the evidentiary ruling violates a specific federal constitutional right or is so egregious it renders the petitioner's trial fundamentally unfair.  *Payne v. Tennessee*, 501 U.S. 808, 825 (1991); *Darden v. Wainwright*, 477 U.S. 168, 179-83 (1986); *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005).  Thus, the question before this Court is not whether the state trial court properly applied state evidentiary rules but, rather, whether Davis's federal constitutional rights were violated by the state trial court's rulings on evidentiary matters.  *See Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir. 2005) (holding federal habeas review of a state court's evidentiary ruling focuses exclusively on whether the ruling violated the federal Constitution).

> Due process is implicated only for rulings "of such a magnitude" or "so egregious" that they "render the trial fundamentally unfair."  It offers no authority to federal habeas courts to review the mine run of evidentiary rulings of state trial courts.  Relief will be warranted only when the challenged evidence "played a crucial, critical, and highly significant role in the trial."

The due process inquiry must consider the significance of the challenged evidence "in the context of the entire trial." We have held that the Due Process Clause does not afford relief where the challenged evidence was not the principal focus at trial and the errors were not "'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" This is a high hurdle, even without AEDPA's added level of deference.

*Gonzales v. Thaler,* 643 F.3d 425, 430-31 (5th Cir. 2011) (footnotes omitted).

### D. Analysis

Insofar as Davis argues his state trial court erroneously allowed the complaining witness to testify about the sexual abuse which she sustained at Davis's hands in Columbia prior to the abuse she sustained from Davis when they resided in Granbury, Texas, Davis's complaint turns initially on interpretations of state evidentiary rules. The Texas Court of Criminal Appeals' conclusion in the course of Davis's state habeas proceeding that Davis's fifteenth claim for state habeas relief did not justify state habeas relief is binding upon this Court in this federal habeas corpus proceeding. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Garza v. Stephens*, 738 F.3d 669, 677 (5th Cir. 2013) (holding a Texas habeas court's interpretation of evidentiary rules was binding in a federal habeas case); *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009) (a state court's interpretation of state law binds a federal court sitting in habeas corpus).

Davis identifies no clearly establish Supreme Court precedent establishing that testimony about a defendant's long history of committing multiple acts of child sexual abuse, which includes both the abuse charged in a criminal indictment as well as abuse which took place prior, and subsequent, to the offense charged in the indictment is outside the "jurisdiction" of a state trial court or otherwise inadmissible. This Court's independent review of relevant legal authorities

likewise reveals no authority for such a proposition. Under such circumstances, this Court concludes the state trial court's admission of testimony from the complaining witness regarding the sexual abuse Davis inflicted upon her in Columbia, when she was even younger than when she resided in Granbury, Texas at the time of the charged offense, did not render Davis's state criminal trial fundamentally unfair. The same holds for the complaining witness's testimony about the sexual abuse she suffered at Davis's hands when she later lived with Davis in Katy, Texas.

Therefore, the TCCA's rejection on the merits of Davis's fifteenth claim for federal habeas relief herein (which corresponds to Davis's fifteenth claim in his state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Davis's trial, state direct appeal, and state habeas proceedings. Under the AEDPA, Davis's fifteenth claim herein does not warrant federal habeas corpus relief.

## VII. INEFFECTIVE ASSISTANCE CLAIMS

### A.  Overview of the Claims

In his federal habeas corpus petition Davis asserts a plethora of complaints about the performance of his trial counsel, including arguments that his trial counsel rendered ineffective assistance by (1) advising Davis to absent himself from trial (claim 1); (2) failing to investigate the case against Davis, present a defense, and call witnesses (claim 2); (3) failing to challenge two jurors for cause based on implied bias (claim 3); (4) failing to request a hearing on the admissibility of testimony about extraneous criminal acts (claim 5); (5) failing to object to the testimony of the SANE nurse examiner (claim 7); (6) failing to request a hearing on the admissibility of outcry witness testimony (claim 8); (7) changing the defendant's election for jury sentencing to

29

sentencing by the trial judge (claim 13); and (8) failing to object to the admission, or request a hearing on the Admissibility, of extraneous offense testimony (claim 14).

### B.  State Court Disposition

Davis fairly presented the same ineffective assistance complaints as his first through third, fifth, seventh, eighth, thirteenth, and fourteenth claims in his state habeas application.  The TCCA rejected those claims on the merits when it *denied* Davis state habeas relief.

### C.  Clearly Established Federal Law

Insofar as Davis relies upon the ABA's Guidelines as setting the appropriate standard for federal habeas review of a state trial counsel's performance, those recommendations for the performance of trial counsel do not set forth the operative standard of *judicial* review for the performance of trial counsel.  *Bobby v. Van Hook*, 558 U.S. 4, 8 (2009) (the ABA Guidelines are "only guides" to what reasonableness means, not its definition); *Druery v. Thaler*, 647 F.3d 535, 541 n.2 (5th Cir. 2011) ("Best practices urged by the ABA do not necessarily track the contours of the Sixth Amendment.  Consequently, the guidelines do not function as 'inexorable commands' with which all capital defense counsel 'must fully comply.'").

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.  Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

*Strickland v. Washington*, 466 U.S. 668, 688-89 (1984).

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of trial counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland*, 466 U.S. at 687:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). In so doing, a convicted defendant has the burden of proof and must overcome a strong presumption that the conduct of his trial counsel "falls within [a] wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby*, 558 U.S. at 7 (quoting *Strickland*, 466 U.S. at 688-89). Under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Wiggins*, 539 U.S. at 523; *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Thornell v. Jones*, 602 U.S. 154, 144 S. Ct. 1302, 1310 (2024); *Strickland*, 466 U.S.

at 694.  "This requires a substantial, not just conceivable, likelihood of a different result."  *Jones*, 144 S. Ct. at 1310; *Pinholster*, 563 U.S. at 189.

In instances in which the state courts failed to adjudicate either prong of the *Strickland* test (such as those complaints the state courts summarily dismissed under the Texas writ-abuse statute or which the petitioner failed to fairly present to the state courts), this Court's review of the un-adjudicated prong is de novo.  *See Porter v. McCollum*, 558 U.S. 30, 39 (2009); *Rompilla v. Beard*, 545 U. S. 374, 390 (2005).

Under the AEDPA's deferential standard of review, claims of ineffective assistance adjudicated on the merits by a state court are entitled to a doubly deferential form of federal habeas review.  The AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow,* 571 U.S. 12, 19 (2013).  Under 28 U.S.C. § 2254(d)(1), "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *White v. Wheeler,* 577 U.S. 73, 77 (2015) (quoting *White v. Woodall,* 572 U.S. 415, 419-20 (2014)); *Harrington v. Richter,* 562 U. S. 86, 103 (2011).

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision.  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.   "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."

*Harrington*, 562 U. S. at 101 (Citations omitted).

### D.  Analysis

Because the TCCA rejected all of Davis's ineffective assistance claims on the merits in the course of Davis's state habeas proceeding, the highly deferential AEDPA standard applies.  Out of an abundance of caution, however, this court will also review of all of Davis's ineffective assistance claims herein under a *de novo* standard.

### 1.  Advising Davis to Abscond from Trial

### a.  AEDPA Review

As explained in Section I.C. above, during the evidentiary hearing on Davis's motion for new trial, Davis and his nephew both testified that Davis's trial counsel advised them on the evening of the first day of trial that she was *not* offering legal advice but, if she were the defendant, she would flee the jurisdiction.  Davis testified at the same hearing that he determined not to return to trial because he wanted a new defense counsel, and he believed his absence would necessitate a mistrial and subsequent retrial.  As explained in Section I.D. above, on direct appeal, the Texas Court of Appeals concluded that the state trial court implicitly found that Davis had *voluntarily* absented himself from trial, which factual finding was supported by the record.  This factual finding implicitly rejects Davis's contention that he was *compelled* to abscond from trial by his trial counsel's advice.

Having independently review the entirety of the record from Davis's trial, direct appeal, and state habeas proceedings, this court concludes the state court's factual determination that Davis *voluntarily* absented himself from trial is fully supported by the record before the state habeas court. Davis and his nephew both admitted under oath that Davis's trial counsel prefaced her comment about her client possibly fleeing the jurisdiction by explaining she was *not* offering legal advice.

It is unnecessary for this court to determine whether the allegedly flippant remark by Davis's trial counsel in question rose to the level of deficient performance under the first prong of *Strickland*. This is because, in view of the state court factual finding that Davis voluntarily absented himself from trial, the state habeas court could reasonably have concluded there was no reasonable probability that, but for the actions of Davis's trial counsel, the outcome of either phase of Davis's trial would have been any different. Thus, the state habeas court could reasonably have believed this ineffective assistance claim failed to satisfy either prong of *Strickland*.

Davis's decision to voluntarily absent himself from trial (and to convince his friends and family who were present the first day of trial likewise not to return to trial) renders the comment of Davis's trial counsel inadequate to satisfy the prejudice prong of *Strickland*. Davis identifies no evidence other than his own testimony which became unavailable to the defense as a result of the comment by his trial counsel. Davis's failure to testify at his trial was the product of his own *voluntary* decision.

Davis alleges no facts showing that his attorney's comment interfered with the defense's ability to call any defense witnesses who possessed relevant, admissible, testimony likely to impact the outcome of either phase of his trial. None of the witnesses who furnished affidavits in support of Davis's state habeas application stated any facts showing that they possessed personal

34

knowledge of the events giving rise to the specific criminal charge against Davis.  While those potential witnesses had opinions regarding the veracity and credibility of the complaining witness, the jury had the opportunity to view the complaining witness's trial testimony firsthand and to make its own determination as to her credibility.  None of the individuals who furnished the state habeas court with affidavits in support of Davis's state habeas application bothered to show up after the first day of trial.  Some of them never appeared at trial at all.  More importantly, none of them identified anything Davis's trial counsel did or said which prevented them from appearing and testifying at Davis's trial.

Davis had the opportunity to testify in his own defense at his trial but voluntarily chose to absent himself from trial after the conclusion of the first day of trial.  The state appellate court reasonably determined that the trial court found Davis's absence from trial henceforth voluntary. That factual determination is fully supported by the testimony from the hearing on Davis's motion for new trial.  Furthermore, Davis was subsequently convicted of bail jumping arising from his decision to absent himself from trial.  The state habeas court could reasonably have concluded that Davis's trial counsel did not advise Davis in her capacity as his legal advisor to flee the jurisdiction or to abscond from trial.  The Texas Court of Appeals which affirmed Davis's conviction for bail jumping and failure to appear expressly rejected Davis's argument that his attorney's comment about fleeing the jurisdiction constituted a reasonable excuse for Davis's failure to appear.  *Davis v. State*, no. 07-20-00047-CR, 2020 WL 5415397, *2-*4 (Tex. App. – Amarillo, Sept.  8, 2020).

Davis admitted during his testimony at the hearing on his motion for new trial that his trial counsel indicated that if Davis failed to return to trial, she would move for a mistrial.  When Davis failed to appear for the second day of trial, that is precisely what Davis's trial counsel did – albeit unsuccessfully.  Davis was far from a novice in terms of the Texas criminal justice system.  The

35

state trial court concluded Davis has previously been convicted of no less than three felony charges. The uncontroverted testimony of the fingerprint expert who testified at the punishment phase of Davis's trial confirmed this fact. The state habeas court could reasonably have concluded Davis was well aware of the possibility that the trial court might not grant a defense motion for mistrial in the event that he absconded from trial.

Under these circumstances, the TCCA's rejection on the merits of Davis's first ineffective assistance claim herein (which corresponds with the first claim in Davis's state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Davis's trial, state direct appeal, and state habeas proceedings. Under the AEDPA, Davis's first claim herein does not warrant federal habeas corpus relief.

### b. *De Novo* Review

Moreover, having conducted an independent *de novo* review of the entire record now before the court, this court concludes Davis's first claim herein fails to satisfy the prejudice prong of *Strickland.* At trial, the uncontroverted testimony of the complaining witness and her older half-sister established Davis engaged in a long-standing pattern of sexually abusing them both when they were children, including engaging in abuse of the complaining witness during the time period she resided with Davis in Granbury, Texas as charged in the indictment. None of the potential witnesses who furnished the state habeas court or this court with affidavits in support of Davis's ineffective assistance claims could have offered any testimony to rebut the trial testimony of the complaining witness and her older half-sister regarding Davis's specific acts of indecency which they described in graphic detail during their trial testimony. For example, none of the affidavits

36

in question purport to state any information within the affiants' person al knowledge regarding the facts and circumstances of the abuse alleged by the complaining witness.  None of the affidavits in question purport to furnish Davis with an alibi for the any of the instances of child sexual abuse identified by the complaining witness.  None of the affidavits in question purport to express personal knowledge as to the reputation within any recognizable community of the complaining witness for truthfulness.

Instead, these potential witnesses simply attempt to identify specific bad acts by the complaining witness in an attempt to attack the character and credibility of the complaining witness.  It is well-settled under Texas law, however (specifically Rule 608(b) of the Texas Rules of Evidence), that a witness's credibility may not be impeached with specific instances of the witness's conduct other than a criminal conviction.  *Billodeau v. State*, 277 S.W.3d 34, 39-40 (Tex. Crim. App. 2009).  None of the witness affidavits Davis furnished to his state habeas court (including his own) identified any crimes for which the complaining witness was convicted.  It also goes without saying that the complaining witness, unlike all of the witnesses who furnished affidavits in Davis's state habeas proceeding (including Davis himself), had the moral courage to show up at Davis's trial and testify under oath before a jury.  Davis's own state habeas affidavit, which consists primarily of a rambling series of pejorative anecdotal comments about the complaining witness (labeling her a narcissist, liar, selfish, and mental disturbed), does not specifically deny that he engaged in the acts of sexual indecency detailed by the complaining witness in her trial testimony.  It is well-settled under Texas law that a witness may not give an opinion as to the truth or falsity of other evidence.  *Schultz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993).

37

The affidavits of Davis's friends and relatives accompanying his state habeas application did little more than cast aspersions on the character (and thereby indirectly comment on the credibility) of the complaining witness by citing specific instances of bad conduct. Under well-settled Texas law, it is far from clear that any of the information (i.e., attacks on the character of the complaining witness) in Davis's state habeas witness's affidavits would have been admissible under Texas evidentiary rules. Even if Davis's trial counsel had somehow managed to obtain the admission of such testimony, it might well have opened the door to devastating rebuttal testimony from a qualified prosecution mental health expert describing the types of emotional problems (including narcissistic behavior, antisocial behavior, and self-destructive behavior) typically displayed in adolescence and into adulthood by victims of child sexual abuse. *See Bowley v. State*, 310 S.W.3d 431, 435 (Tex. Crim. App. 2010) (a party who opens the door to the admission of otherwise inadmissible evidence risks the adverse effects of having that evidence admitted). Thus, there is no reasonable probability that, but for the alleged deficient performance of Davis's trial counsel, the outcome of either phase of Davis's trial would have been any different. Even when viewed under a *de novo* standard, Davis's first claim herein does not warrant federal habeas relief.

## 2. Failure to Investigate, Call Witnesses, and Present a Defense

### a. AEDPA Review

Davis asserts in a conclusory manner that his trial counsel failed to adequately investigate the charge against Davis, failed to call the witnesses who furnished affidavits to the state habeas court, and failed to present a defense. As explained below, conclusory assertions of ineffective assistance or uncalled witnesses will not support a claim of ineffective assistance of counsel.

Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts requires that the petition "state the facts supporting each ground." This is very different

38

from the "notice pleading" requirement of Rule 8, FED. R. CIV. P. *See Murphy v. Dretke*, 416 F.3d 427, 436-38 (5th Cir. 2005) (holding generic reference to individual voir dire of entire jury venire insufficient to support a *Batson* claim (citing *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (conclusory allegations fail to establish a valid claim of ineffective assistance of counsel); and *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (conclusory allegations do not raise a constitutional issue in a habeas proceeding)). The Fifth Circuit has reaffirmed this rule in a wide variety of contexts. *See, e.g., Fahle v. Cornyn*, 231 F.3d 193, 196-97 (5th Cir. 2000) (conclusory due process allegations that petitioner was denied the presumption of innocence insufficient to support claims for federal habeas relief); *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) (conclusory assertions regarding alleged destruction of exculpatory evidence failed to show State destroyed the evidence in bad faith, i.e., with knowledge of its exculpatory value); *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996) ("A habeas petitioner must make specific allegations; 'conclusory allegations unsupported by specific facts' or 'contentions that in the face of the record are wholly incredible' will not entitle one to discovery or a hearing." (quoting *Blackledge v. Allison*. 431 U.S. 63, 74 (1977)).

It is well-settled in this Circuit that conclusory allegations will not support a claim of ineffective assistance of counsel. *See Harper v. Lumpkin*, 64 F.4th 684, 691-92 (5th Cir. 2023); *United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007); *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Barnard v. Collins*, 958 F.2d 634, 642 n.11 (5th Cir. 1992). It has long been recognized in this Circuit that complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. *Nelson v. Davis*, 952 F.3d 651, 669 (5th Cir. 2020); *United States v. Fields*, 761 F.3d 443, 461 (5th

Cir. 2014); *Coleman v. Thaler*, 716 F.3d 895, 906 (5th Cir. 2013); *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010); *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007); *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985)); *Buckelew v. United States*, 575 F.2d 1226, 1227 (5th Cir. 1978).  To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable.  *Nelson*, 952 F.3d at 669; *Fields*, 761 F.3d at 461; *Gray v. Epps*, 616 F.3d 436, 443 (5th Cir. 2010); *Woodfox*, 609 F.3d at 808; *Gregory v. Thaler,* 601 F.3d 347, 352 (5th Cir. 2010); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).  "An applicant 'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"  *Gregory*, 601 F.3d at 352.

For many of the same reasons discussed in detail in Section VII.D.1. above, the state habeas court could reasonably have determined that Davis's conclusory complaints of a failure to investigate and call witnesses to testify failed to satisfy either prong of *Strickland*.  Davis alleges no specific facts showing that his trial counsel failed to investigate the case against Davis or to interview relevant witnesses.  Davis does identify several individuals whom he says should have been called to testify.  But the affidavits Davis submitted to the state habeas court from these individuals did *not* contain any information suggesting these potential witnesses, including himself, were prepared to controvert any of the specific factual assertions of sexual abuse made by the complaining witness during her trial testimony.  Instead, Davis's state habeas affidavits consisted of little more than scurrilous attacks upon the character and credibility of the

complaining witness.[22]  None of the affidavits Davis furnished to the state habeas court directly challenged the factual accuracy of the assertions made by the complaining witness describing in graphic detail precisely how Davis sexually assaulted her when she was a young child living in his residence in Granbury, Texas.

Under these circumstances, the TCCA's rejection on the merits of Davis's second ineffective assistance claim herein (which corresponds with the second claim in Davis's state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Davis's trial, state direct appeal, and state habeas proceedings.  Under the AEDPA, Davis's second claim herein does not warrant federal habeas corpus relief.

### b.  *De Novo* Review

Moreover, having conducted an independent *de novo* review of the entire record now before the court, this court concludes Davis's second claim herein fails to satisfy the prejudice prong of *Strickland.*  Nothing in the affidavits of Davis or his proposed other witnesses refutes the

---

[22] During her testimony at Davis's trial, the complaining witness candidly admitted that she suffered intense emotional distress as a result of the sexual abuse she experienced as a young child at Davis's hands.  At trial, Melanie Ott also testified extensively about the emotional difficulties the complaining witness experienced well into adulthood, as well as the efforts Mrs. Ott and her family undertook to help the complaining witness obtain mental health assistance to deal with the trauma she had endured as a child.  Thus, the jury was well aware that the complaining witness had experienced severe emotional distress as a direct result of Davis's criminal misconduct.  Under such circumstances, it is hardly surprising, and hardly exculpatory, that Davis's proposed defense witnesses were prepared to testify the complaining witness had engaged in emotionally unstable behavior as an adolescent and teenager.  As explained above, even if Davis's trial counsel had somehow managed to gain the admission of the testimony of the individuals who furnished affidavits in Davis's state habeas proceeding, that act might well have opened the door to testimony from a prosecution mental health expert about the negative psychological impact of child sexual abuse on a victim during their adolescent, teenage, and adult years.

fact-specific trial testimony of the complaining witness or her older half-sister about Davis's sexual abuse of them as children.

### 3.  Failure to Challenge Venire Members for Cause Based on Presumed Bias

#### a.  AEDPA Review

In his third claim for federal habeas relief, Davis complains that his trial counsel should have questioned further during voir dire, challenged for cause, or peremptorily stricken two venire members who had family members in law enforcement and who later served on his jury. Davis alleges one of the jurors in question was the son-in-law of the Hood County Sheriff, had familiarity with law enforcement personnel, and admitted during voir dire that his personal experiences could bias him. Davis alleges the other venire member who became a juror acknowledged that he and his wife knew the prosecutor personally and he had a relative in law enforcement.

The selection of a jury is more of an art than a science. *Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989) (recognizing that "the selection of a jury is, inevitably, a call upon experience and intuition" where trial counsel "must draw upon his own insight and empathic abilities"). A trial counsel's actions during voir dire are considered to be a matter of trial strategy; such decisions cannot be the basis for an IAC claim unless trial counsel's tactics are shown to be so ill-chosen that they permeate the entire trial with obvious unfairness. *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). As for the bias of a prospective juror, such does not constitutionally disqualify him or her from sitting on a case "if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). As explained below, Davis has not alleged any specific facts which demonstrate either of the two venire members in question possessed constitutionally disqualifying bias.

Venire member Riley stated during voir dire examination by the prosecution that (1) he had a relative or friend who had been the victim of sexual abuse; (2) he did not believe that would prevent him from being fair and deciding the case based on what the jury heard at trial; (3) he believed he could be a fair and impartial juror; (4) he had multiple cousins who had been arrested for a variety of criminal offenses and a family member who had been the victim of a theft; and (5) he nonetheless believed he could be a fair and impartial juror.[23]  During voir dire examination by Davis's defense counsel, Riley stated that (1) he was the son-in-law of the Hood County Sheriff and it might bias him; (2) while he had personal experience with law enforcement personnel, he believed he could be fair and unbiased; and (3) he could listen to all the evidence before deciding the case.[24]

Venire member Saltarelli stated during voir dire examination by the prosecution that (1) he had a family member who forty years before had been arrested for DWI; (2) he believed his relative had been treated fairly; (3) his family had been a victim of a theft; (4) he did not believe that experience would prevent him from being an unbiased juror; (5) he had previously served on juries in four criminal trials, one of which resulted in a conviction and another, in federal court, resulted in an acquittal; (6) he understood the nature of a charge of indecency with a child as explained by the prosecutor; (7) he believed he could listen to the evidence and render a verdict for the

---

[23] 2 R.R. [ECF no. 16-5] 28, 39-40.

[24] 2 R.R. [ECF no. 16-5] 76-78.

prosecution; and (8) he believed that sometimes the fair verdict is not guilty.[25]  Under voir dire examination by Davis's defense counsel, Saltarelli stated that while his nephew in Virginia was a deputy sheriff, he did not believe that fact would bias him from sitting on Davis's jury.[26]

During Saltarelli's voir dire examination the prosecutor revealed that he knew Saltarelli and his spouse.[27]  At no point during voir dire examination, however, did Saltarelli indicate that his personal relationship with the prosecutor (or his nephew's role in law enforcement in Virginia) would prevent Saltarelli from being a fair and impartial juror at Davis's trial.  Moreover, at no point during voir dire examination did Saltarelli indicate that he was unable or incapable of listening to all the evidence and rendering a verdict based solely on the evidence and the law as instructed by the trial court.

Davis's assertion that Riley and Saltarelli were constitutionally disqualified as biased is meritless.  At no point during their voir dire examinations did either Riley or Saltarelli indicate they were unable to set aside their personal relationships with family members in law enforcement (or their friendship with the prosecutor) and render a verdict based solely on the evidence presented at trial and the law as instructed by the trial court.  This is all the Constitution requires from potential jurors.  *Irvin*, 366 U.S. at 722.  Under such circumstances, the TCCA could reasonably have concluded during Davis's state habeas proceeding that there was nothing objectively

---

[25] 2 R.R. [ECF no. 16-5] 14-17, 21, 23, 76.

[26] 2 R.R. [ECF no. 16-5] 76.

[27] 2 R.R. [ECF no. 16-5] 21.

unreasonable with the decision by Davis's trial counsel not to raise a challenge for cause to, or peremptorily strike, Saltarelli. The TCCA could also have reasonably concluded Davis was not prejudiced within the meaning of *Strickland* by his trial counsel's failure to challenge Saltarelli for cause or failing to exercise a peremptory challenge against Saltarelli.

Davis misperceives the standard for evaluating a potential juror for bias and for disqualification of a venire member for cause. Insofar as Davis contends that he was entitled to a jury venire or jury that was totally ignorant of the facts of his case prior to trial and totally unfamiliar with local law enforcement personnel or local prosecuting attorneys, he is in error. Pretrial ignorance of the facts of a case by jurors is not the standard for determining whether a defendant has been afforded his constitutional right to an impartial jury. *See Tsarnaev v. United States*, 142 S. Ct. 1024, 1034 (2022) ("The right to an 'impartial' jury 'does not require *ignorance.*'" (citing *Skilling v. United States*, 561 U.S. 358, 381 (2010)). Notorious crimes are, almost as a matter of necessity, brought to the attention of those informed citizens who are best fitted for jury duty. *Tsarnaev*, 142 S. Ct. at 1034 (citing *Reynolds v. United States*, 98 U.S. 145, 155-56 (1879)). A trial court protects the defendant's Sixth Amendment right to an impartial jury by ensuring that jurors have no bias or prejudice that would prevent them from returning a verdict according to the law and evidence. *Tsarnaev*, 142 S. Ct. at 1034 (citing *Connors v. United States*, 158 U.S. 408, 413 (1895)).

Davis argues this Court should *imply* the existence of disqualifying bias because of Riley and Saltarelli's familial relationships with law enforcement officers and (in the case of Saltarelli) friendship with the prosecutor. The Fifth Circuit has explained the doctrine of implied bias as follows:

Implied bias . . .  exists when "no reasonable person could not be affected in his actions as a juror." *Brooks*, 444 F.3d at 331. In these extreme situations, "the Constitution refuses to accept any assurances to the contrary." *Id.* In other words, "[w]here a juror has a close connection to the circumstances at hand ... bias may be presumed as a matter of law." *Buckner*, 945 F.3d at 910 (citing *Brooks*, 444 F.3d at 330).

*Smith v. Phillips* is the leading Supreme Court case considering a claim of implied juror bias. 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *see also Remmer v. United States*, 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1956); *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). The Court in *Smith* declined to presume bias as a matter of law when a juror in a murder trial applied for a job in the district attorney's office, a fact not disclosed until after the conviction. *Smith*, 455 U.S. at 213, 221, 102 S.Ct. 940. In a concurring opinion, Justice O'Connor clarified that despite the Court's holding, there are "some extreme situations that would justify a finding of implied bias" and outlined three such examples:

> ... a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.

*Id.* at 222 (O'Connor, J., concurring). When considering claims of implied juror bias, this court routinely looks to the examples in Justice O'Connor's concurrence. *E.g., Buckner*, 945 F.3d at 912–14; *Uranga v. Davis*, 893 F.3d 282, 288–89 (5th Cir. 2018); *Morales v. Thaler*, 714 F.3d 295, 299 (5th Cir. 2013); *Brooks*, 444 F.3d at 30-31; *Solis v. Cockrell*, 342 F.3d 392, 396 (5th Cir. 2003); *Andrews v. Collins*, 21 F.3d 612, 620 (5th Cir. 1994); *United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988).

*Craaybeek v. Lumpkin*, 855 F. App'x 943, 946-47 (5th Cir.  June 17, 2021).

Like the juror in *Craaybeek* whom the Fifth Circuit determined was *not* subject to the implied bias doctrine (despite being a former law enforcement officer), neither Riley nor Saltarelli was employed by the prosecuting agency; neither was a close relative of a participant in the trial or of a person involved in the criminal transaction; and neither Riley nor Saltarelli was a witness or otherwise involved in the criminal transaction.  Thus, the Fifth Circuit's doctrine of implied bias has no application to Riley or Saltarelli.

The TCCA could reasonably have concluded during Davis's state habeas proceeding that this ineffective assistance claim failed to satisfy either prong of *Strickland*.  Accordingly, the

TCCA's rejection on the merits of Davis's third claim herein (which corresponds with his third claim in his state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Davis's trial, state direct appeal, and state habeas proceedings. Under the AEDPA, Davis's third claim herein does not warrant federal habeas corpus relief.

### b. *De Novo* Review

Likewise, even under *de novo* review this ineffective assistance claim fails to satisfy either prong of *Strickland*. A trial judge's appraisal of potential bias among prospective jurors is entitled to considerable deference because it is influenced by a host of factors impossible to capture fully in the record, such as the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty. *See Tsarnaev*, 142 S. Ct. at 1034 (citing *Skilling*, 561 U.S. at 386). Logically, the same deference is due a trial counsel's subjective evaluation of the demeanor of potential jurors. *Romero*, 884 F.2d at 878 (recognizing that "the selection of a jury is, inevitably, a call upon experience and intuition" where trial counsel "must draw upon his own insight and empathic abilities"). Davis does not allege any specific facts which establish that the conduct of his trial counsel during jury selection was objectively unreasonable.

Davis has failed to overcome the presumption that the strategic decisions of trial counsel during jury selection fell outside the broad range of objectively reasonable legal representation. Saltarelli had served on a federal criminal jury that returned a verdict of not guilty. Davis's trial counsel could reasonably have considered this information and viewed Saltarelli as potentially favorably disposed toward the defense if the evidence warranted a not guilty verdict. Davis's trial counsel cannot reasonably be faulted for failing to anticipate during jury selection that Davis and

all the defense's witnesses would abscond before testifying at trial. Likewise, Riley and Saltrarelli repeatedly stated during voir dire examination that they believed they could be fair and impartial. Neither was closely related to a participant or witness at trial. The State was represented at Davis's trial by the Office of the Hood County *District Attorney*, *not* the Hood County *Sheriff's Department*. Davis does not allege that Riley or Saltarelli was related to anyone in the Hood County District Attorney's Office. Thus, this assertion of ineffective assistance fails to overcome the presumption of objective reasonableness applicable to trial counsel's strategic decision-making. *Teague*, 60 F.3d at 1172.

Likewise, Davis alleges no facts showing there is a reasonable probability that, but for the failure of Davis's trial counsel to challenge Saltarelli and Riley for cause (based on implied bias) or to peremptorily strike either venire member, the outcome of either phase of Davis's trial would have been any different. The overwhelming evidence of Davis's guilt was presented by the *uncontroverted* trial testimony of the complaining witness and her older half-sister. Even under *de novo* review, Davis's third claim for federal habeas relief satisfies neither prong of *Strickland*.

### 4. Failure to Request a Hearing re: Admission of Extraneous Offense Testimony

#### a. AEDPA Review

In his fifth claim for federal habeas relief, Davis argues that his trial counsel should have requested a hearing, as required by Section 3 of Article 38.37 to determine whether the probative value of admitting the testimony of the complaining witness's older half-sister about the sexual abuse Davis inflicted on her as a child outweighed the potentially prejudicial impact of this testimony. Davis fails, however, to allege any specific facts showing a reasonable probability exists that, but for the failure of his trial counsel to request such a hearing outside the jury's presence, the outcome of either phase of Davis's trial would have been any different. At no point

48

in his federal habeas petition (ECF No. 1) or his brief in support (ECF No. 4) does Davis allege any *facts* showing the requested hearing would have changed the outcome of his trial.   As explained in Section VII.D.2. above, conclusory assertions such as Davis's fifth claim herein will not support a claim of ineffective assistance.  Davis does not allege any facts showing evidence existed at the time of his trial which his trial counsel could have presented at a hearing outside the jury's presence to convince the state trial court not to admit the testimony of the complaining witness's older half-sister.

While Davis and the witnesses who furnished the state habeas court with affidavits attacked the credibility of the complaining witness (but not the substance of her highly inculpatory accounts of Davis's sexual abuse of her), none of the affidavits Davis furnished to the state habeas court included any specific factual assertions impacting the admissibility of the testimony of the complaining witness's older half-sister.  In short, Davis offered the state habeas court no specific facts, much less any evidence, establishing that there was any legitimate reason for the state trial court to exclude the testimony of the complaining witness's older half-sister.

As Respondent points out, under Texas law, specifically Rule 403 of the Texas Rules of Evidence, Texas trial courts are obligated to consider a variety of facts when determining whether to admit testimony of extraneous offenses: (1) the inherent probative value of the evidence (how strongly does the evidence serve to make more or less probable the existence of a fact of consequence to the litigation); (2) the proponent's need for the evidence (the availability of other compelling or undisputed evidence to prove the same fact); (3) any tendency of the evidence to suggest decision on an improper basis (e.g., does the evidence tend to encourage decision based on hostility or sympathy rather than the logical probative value of the evidence); (4) any tendency of the evidence to confuse or distract the jury from the main issue (does the evidence consume an

inordinate amount of time to present or answer); (5) any tendency of the evidence to be given undue weight by a jury that was less equipped to evaluate the probative force of the evidence (such as some types of scientific or highly technical evidence that might tend to confuse a lay jury); and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time (does presentation of the evidence hold a potential undue delay or needless presentation of cumulative evidence). *See Valadez v. State*, 663 S.W.3d 133, 142-46 (Tex. Crim. App. 2022) (quoting extensively and applying the foregoing principles described in *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006)).

At Davis's trial, the complaining witness's testimony dove-tailed remarkably with that of her older half-sister. Both witnesses described being sexually abused by Davis beginning when they were living in Davis's home in Columbia when they were six or seven years old. Both described Davis's penchant for requesting a "foot rub" during which he would guide their hand to touch his male sexual organ. Both also described Davis touching them intimately when they grew older and were living in Granbury, Texas. The testimony of the complaining witness's older half-sister filled only seven pages in the trial record. Despite this fact, it was highly probative in nature, neither technical nor difficult to comprehend, and presented very little risk for confusing the issues properly before the jury or of injecting improper emotional considerations into the trial. In sum, the factors relevant under Texas law to a Rule 403 determination strongly favored the admission of the testimony of the complaining witness's older half-sister.

The TCCA could reasonably have concluded during Davis's state habeas proceeding that there was no reasonable probability the trial court would have excluded the testimony of the complaining witness's older half-sister had Davis's trial counsel requested a Rule 403 hearing as permitted under Section 3 of Article 38.37.

50

Under such circumstances, the TCCA could reasonably have concluded during Davis's state habeas corpus proceeding that the failure of Davis' trial counsel to request a Rule 403 hearing on the admissibility of the testimony of the complaining witness's older half-sister was objectively reasonable.  It is well-settled in this Circuit that a failure to make a futile or meritless objection or motion or the failure to raise a meritless claim cannot form the basis for a finding of deficient performance under *Strickland*.  *See Guidry v. Lumpkin*, 2 F.4th 472, 491 (5th Cir. 2021) (defense counsel cannot be ineffective for failure to raise a meritless claim), *cert. denied*, 143 S. Ct. 1212 (2022); *Evans v. Davis*, 875 F.3d 210, 219 (5th Cir. 2017) ("Obviously, counsel is not deficient for failing to make meritless suppression motions."); *Segundo v. Davis*, 831 F.3d 345, 350-51 (5th Cir. 2016) (counsel not ineffective for filing to raise a meritless claim); *Reed v. Stephens*, 739 F.3d 753, 778 (5th Cir. 2014) (failure to assert a meritless objection is not grounds for deficient performance (citing *Clark v. Thaler*, 673 F.3d 410, 427 (5th Cir. 2012)); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) (failure to lodge futile objections does not qualify as ineffective assistance).

Likewise, the TCCA could reasonably have concluded this ineffective assistance complaint failed to satisfy the prejudice prong of *Strickland*.  *See Young v. Davis*, 835 F.3d 520, 528 n.36 (5th Cir. 2016) (failure to raise a meritless claim did not prejudice defendant within the meaning of *Strickland*); *Garza v. Stephens*, 738 F.3d 559, 677 (5th Cir. 2013) (failure to attempt to introduce inadmissible evidence did not prejudice the defendant); *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009) (failure to make a meritless objection did not prejudice defendant); *United States v. Kimler*, 167 F.3d 889, 873 (5th Cir. 1999) (failure to raise a meritless argument was not prejudicial because the outcome of the proceeding would not have been different had the attorney raised the issue); *Teague v. Scott*, 60 F.3d 1167, 1174 (5th Cir. 1995) (state appellate counsel's

failure to raise a claim on direct appeal that lacked merit did not prejudice the defendant under *Strickland*); *Smith v. Puckett*, 907 F.2d 581, 585 (5th Cir. 1990) (failure to challenge identification procedure did not prejudice defendant where there was no evidence the identification procedure was suggestive).

For the foregoing reasons, the TCCA's denial on the merits of Davis's fifth claim herein (which corresponds with his fifth claim in his state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Davis's trial, state direct appeal, and state habeas proceedings.  Under the AEDPA, Davis's fifth claim herein does not warrant federal habeas corpus relief.

### b.  *De Novo* Review

Moreover, for the same reasons discussed above, after independently reviewing the entire record now before the Court, this Court concludes after *de novo* review that Davis's fifth claim herein fails to satisfy either prong of *Strickland*.  Even under a *de novo* standard, Davis's fifth claim herein does not warrant federal habeas relief.

### 5.  Failure to Object to the Testimony of the Sexual Assault Nurse Examiner

### a.  AEDPA Review

In his seventh claim for federal habeas relief, Davis argues that his trial counsel rendered ineffective assistance by failing to object to the testimony of the sexual assault nurse examiner ("S.A.N.E.").  The only potential basis for such an objection identified by Davis in either his federal habeas petition or his brief in support is that the testimony of the S.A.N.E. was a form of "bolstering" testimony and not related to the medical treatment of the complaining witness.

Davis argues that the S.A.N.E.'s interview of the complaining witness took place more than a decade after the actual sexual abuse occurred, did not involve a physical examination, was therefore not truly "medical" in nature, and was unrelated to any actual medical treatment. Davis's argument is premised on an unreasonably limited view of the nature of the "medical" care and treatment needed by a victim of child sexual abuse. As previously explained (*see note* 22 *supra*), the type of medical treatment the victims of childhood sexual abuse need most is often psychiatric in nature and that need may exist for decades *after* the actual sexual abuse took place. As the complaining witness testified at trial, her emotional and psychological problems stemming from the sexual abuse Davis inflicted on her when she was a child continued to torment her well into her adult years. The only way for the S.A.N.E. to obtain the *medical* information necessary to assist in determining the type and nature of the *psychiatric* treatment the complaining witness required was for the S.A.N.E. to interview the complaining witness and record all relevant medical information. Thus, the S.A.N.E. interview was clearly medical in nature; the factual premise underlying this ineffective assistance claims is devoid of arguable merit.

The TCCA could reasonably have concluded that this ineffective assistance claim failed to satisfy the deficient performance prong of *Strickland* because none of the proposed objections urged by Davis in his seventh claim possessed any arguable merit. Davis's trial counsel cannot reasonably be faulted for failing to make what in all reasonable likelihood would have been a futile objection. *Guidry*, 2 F.4th at 491 (defense counsel cannot be ineffective for failure to raise a meritless claim). Likewise, the failure of Davis's trial counsel to make a futile objection did not prejudice Davis within the meaning of *Strickland*. *Kimler*, 167 F.3d at 893 (failure to raise an argument lacking in merit cannot prejudice a defendant because there is no possibility of a different outcome had counsel raised the argument).

Furthermore, as correctly pointed out by Respondent, the testimony of the S.A.N.E. and her report, both of which were admitted into evidence without objection, were cumulative of the testimony of the complaining witness, her older half-sister, and Melanie Ott. The TCCA also could reasonably have concluded when it denied this ineffective assistance claim on the merits during Davis's state habeas proceeding that Davis was not prejudiced within the meaning of *Strickland* by his trial court's failure to object to the S.A.N.E.'s testimony because that testimony and the report of the S.A.N.E. were merely cumulative of the complaining witness's testimony and that of Melanie Ott and the complaining witness's older half-sister.

The Texas appellate court opinion cited by Davis in his brief in support of his seventh claim for federal habeas petition fully supports a finding of no *Strickland* prejudice. In *Salinas v. State*, 166 S.W.3d 368 (Tex. App. – Fort Worth 2005, *pet. ref'd*), the Court of Appeals confronted a situation in which a six-year-old made an outcry to her mother that she had been anally penetrated by the finger of a male relative the day before. Within 24 hours of her outcry, the child was taken to the hospital. Four and a half months later, the child was taken to a physician for a sexual assault examination. The physician conducted an examination but found no physical evidence of sexual assault. At Salinas's trial, the then-eight-year-old complainant demonstrated for the jury how she had been assaulted using an anatomical doll. The physician who examined the child testified at trial over a defense objection that, despite the absence of physical evidence, she had diagnosed the child with anal sexual assault based solely on the history provided by the complainant. The Court of Appeals concluded the physician's testimony about her diagnosis constituted improper opinion testimony on the credibility of the complainant but, nonetheless, concluded any error in the admission of the physician's testimony was *not* reversible error because there had been a timely outcry, the complainant's trial testimony about the assault was clear and unequivocal, the

complainant visually demonstrated how she had been assaulted using the anatomically correct doll, and the prosecution's argument did not emphasize the examining physician's opinion testimony. *Salinas*, 166 S.W.3d at 371-72.

At Davis's trial the complaining witness's testimony was clear and unequivocal; the testimony of the S.A.N.E. was merely repetitious of the testimony of the complaining witness; and the prosecution's closing argument did not emphasize the testimony of the S.A.N.E. In fact, neither of the two prosecuting attorneys even mentioned the testimony of the S.A.N.E. during their closing jury argument at the guilt-innocence phase of Davis's trial (4 R.R. [ECF no. 16-7] 27-29 & 32-36). Under such circumstances, the TCCA could reasonably have concluded that any error in the admission of the testimony of the S.A.N.E. at Davis's trial was harmless under applicable state law (*see, e.g., Salinas*) and that Davis's ineffective assistance complaint in question failed to satisfy the prejudice prong of *Strickland*.

For the foregoing reasons, the TCCA's denial on the merits of Davis's seventh claim herein (which corresponds with his seventh claim in his state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Davis's trial, state direct appeal, and state habeas proceedings. Under the AEDPA, Davis's seventh claim herein does not warrant federal habeas corpus relief.

### b. *De Novo* Review

Likewise, for the same reasons set forth above, after conducting an independent, *de novo* review of the entire record now before this Court, the Court concludes Davis's seventh claim herein

fails to satisfy the prejudice prong of *Strickland*. Even under *de novo* review, Davis's seventh claim herein does not warrant federal habeas relief.

### 6. Failure to Request a Hearing re Admission of Outcry Testimony by Melanie Ott

#### a. AEDPA Review

In his eighth ground for federal habeas relief, Davis complains that his trial counsel failed to request a hearing outside the jury's presence regarding the admissibility of the testimony of Melanie Ott. Davis argues that the complaining witness admitted during her testimony that she told her biological mother that Davis had abused her *before* the complaining witness ever told Melanie Ott about Davis's sexual abuse of her. Davis argues this rendered it impossible for Mrs. Ott to be an outcry witness under applicable state law. As is once again true, Davis's ineffective assistance complaint is based on an erroneous interpretation of applicable Texas law.

As Respondent correctly points out, Article 38.072 of the TCCP provides an exception to the hearsay rule in certain circumstances for an outcry witness:

> The outcry witness is the first person over the age of 18, other than the defendant, to whom the child spoke about the offense. The statement must be "more than words which give a general allusion that something in the area of child abuse is going on"; it must be made in *some discernable manner and is event-specific rather than person-specific*. Hearsay testimony from more than one outcry witness may be admissible under article 38.072 only if the witnesses testify about different events. There may be only one outcry witness per event. In order to invoke the statutory exception, the party intending to offer the statement must notify the adverse party of the names of the outcry witnesses and a summary of their testimonies, the trial court must conduct a reliability hearing of the witnesses outside the presence of the jury, and the child victim must testify or be available to testify at the proceeding.

*Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (citing *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) (footnotes omitted and emphasis added). The complaining witness testified at trial *only* that she mentioned Davis's sexual abuse of her to her biological mother.

56

Davis does not allege any specific facts, much less furnish any evidence showing that the *specific* acts of abuse which the complaining witness admitted that she mentioned to her biological mother included *all* of the *specific* acts of sexual abuse inflicted upon her by Davis which the complaining witness eventually revealed to Melanie Ott years later over the course of many emotional sessions. As explained above, outcry witness identification under Texas law is event specific. The sexual abuse described in detail at trial by the complaining witness took place over many years and multiple locations (i.e., in Columbia, in Granbury, and in Katy). There is no allegation currently before this Court (and there was no specific factual allegation or evidence before the state habeas court) that the complaining witness told her biological mother about all the specific acts of indecency which Davis perpetrated upon the complaining witness in Granbury and which also formed the basis for the indictment against Davis.

At Davis's trial, the complaining witness was a twenty-three-year-old college student who was fully capable of furnishing detailed accounts of the many incidents of child sexual abuse she suffered at Davis's hand when she resided in Granbury. Both the complaining witness and Melanie Ott testified in detail about how difficult it was for the complaining witness (as a then-seventeen-year-old) to finally disclose to Mrs. Ott the details of her long history of sexual abuse by Davis. There is no fact-specific allegation before this Court (just as there was none before the state habeas court) suggesting that the complaining witness ever gave her biological mother a fully detailed account of *each and every* instance of sexual indecency Davis perpetrated upon her in Granbury, Texas. Davis alleges no facts showing that the biological mother of the complaining witness was available and willing to testify at Davis's trial that the complaining witness had made a sufficiently detailed report of *all* of Davis's acts of sexual indecency with the complaining witness so as to render the biological mother of the complaining witness the *only* possible outcry witness under

applicable Texas law. As explained above, under Texas law, it is permissible for there to be as many outcry witnesses as there were different events of child sexual abuse.

Davis has not alleged any specific facts showing that the complaining witness gave her biological mother a sufficiently detailed account of *each and every* instance of sexual abuse the complaining witness suffered at Davis's hands such as would necessarily render Mrs. Ott the *second* person to whom the complaining witness described *all* of the specific acts of sexual abuse Davis inflicted on the complaining witness in Granbury between 2004 and 2006. In fact, attempting to do so would have amounted to attempting to prove a negative, i.e., that Melanie Ott could *not* have been the *first* adult to whom the complaining witness detailed *all* the specific criminal acts Davis inflicted upon the complaining witness in Granbury, Texas.

Under such circumstances, the TCCA could reasonably have concluded that Davis's trial counsel acted in an objectively reasonable manner in choosing *not* to challenge the admission of Mrs. Ott's testimony as outcry under the provisions of Article 37.072. The TCCA could reasonably have concluded Davis's trial counsel reasonably decided not to engage in what she reasonably believed to be a futile act. Davis's trial counsel cannot reasonably be faulted for failing to engage in futile behavior. *Guidry*, 2 F.4th at 491 (defense counsel cannot be ineffective for failure to raise a meritless claim). Likewise, the TCCA could reasonably have concluded the failures of Davis's trial counsel to seek a continuing objection to Mrs. Ott's testimony or to request a hearing on the admissibility of same did not prejudice Davis within the meaning of *Strickland*. *Kimler*, 167 F.3d at 893 (failure to raise an argument lacking in merit cannot prejudice a defendant because there is no possibility of a different outcome had counsel raised the argument). Thus, the TCCA could reasonably have concluded during Davis's state habeas proceeding that this complaint of ineffective assistance failed to satisfy either prong of *Strickland*.

For the foregoing reasons, the TCCA's denial on the merits of Davis's eighth claim herein (which corresponds with his eighth claim in his state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Davis's trial, state direct appeal, and state habeas proceedings. Under the AEDPA, Davis's eighth claim herein does not warrant federal habeas corpus relief.

### b. *De Novo* Review

Likewise, for the same reasons set forth above, after conducting an independent, *de novo* review of the entire record now before this Court, the Court concludes Davis's eighth claim herein fails to satisfy the prejudice prong of *Strickland*. Even under *de novo* review, Davis's eighth claim herein does not warrant federal habeas relief.

### 7. Changing Defense's Request from Jury Sentencing to Judge Sentencing

### a. AEDPA Review

In his thirteenth claim for federal habeas relief, Davis complains that his trial counsel rendered ineffective assistance by withdrawing the defense's request for jury sentencing and requesting sentencing by the trial court. Davis argues that this action by his trial counsel, combined with Davis's absence during the punishment phase of his trial to result in the imposition of a sentence of life imprisonment and a fine.

As Respondent correctly points out, however, the indictment against Davis charged him with three prior felony convictions. Davis alleges no specific facts showing there was any legal error in any of the three enhancement paragraphs of his indictment or that there was insufficient evidence presented at trial to support the trial court's findings that all three enhancement

paragraphs were true. Respondent correctly argues that, under such circumstances, regardless of whether Davis was sentenced by judge or jury, he was going to receive a life sentence as a habitual offender. *See Childress v. Lynaugh*, 842 F.2d 768, 772-73 (5th Cir. 1988) (holding trial counsel's failure to advise defendant of the statutory right to jury sentencing was not deficient performance within the meaning of *Strickland* because under the Texas habitual offender statute, a life sentence was mandatory regardless of whether a judge or jury sentenced the defendant). Likewise, the TCCA could reasonably have concluded the failure of Davis's trial counsel to do a futile act (i.e., insist on jury sentencing) did not prejudice Davis within the meaning of *Strickland*. *Kimler*, 167 F.3d at 893 (failure to raise an argument lacking in merit cannot prejudice a defendant because there is no possibility of a different outcome had counsel raised the argument). The TCCA could reasonably have concluded this ineffective assistance complaint failed to satisfy either prong of *Strickland*.

For the foregoing reasons, the TCCA's denial on the merits of Davis's thirteenth claim herein (which corresponds with his thirteenth claim in his state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Davis's trial, state direct appeal, and state habeas proceedings. Under the AEDPA, Davis's thirteenth claim herein does not warrant federal habeas corpus relief.

**b. *De Novo* Review**

Likewise, for the same reasons set forth above, after conducting an independent, *de novo* review of the entire record now before this Court, the Court concludes Davis's thirteenth claim herein fails to satisfy the prejudice prong of *Strickland*. *See Young v. Davis*, 835 F.3d 520, 528

n.36 (5th Cir. 2016) (failure to raise a meritless claim did not prejudice defendant within the meaning of *Strickland*); *Garza v. Stephens*, 738 F.3d 559, 677 (5th Cir. 2013) (failure to attempt to introduce inadmissible evidence did not prejudice the defendant); *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009) (failure to make a meritless objection did not prejudice defendant); *Teague v. Scott*, 60 F.3d 1167, 1174 (5th Cir. 1995) (state appellate counsel's failure to raise a claim on direct appeal that lacked merit did not prejudice the defendant under *Strickland*); *Smith v. Puckett*, 907 F.2d 581, 585 (5th Cir. 1990) (failure to challenge identification procedure did not prejudice defendant where there was no evidence the identification procedure was suggestive). Even under *de novo* review, Davis's thirteenth claim herein does not warrant federal habeas relief.

### 8. Failure to Object as Hearsay to Admission or Request a Hearing as to the Admissibility of Extraneous Offense Testimony

#### a. AEDPA Review

In his fourteenth claim for federal habeas relief Davis argues that his trial counsel rendered ineffective assistance by failing to object to the admission of extraneous offense testimony or to request a hearing outside the jury's presence on the admissibility of same.

For the same reasons discussed at length in Section VII.D.4. above, the TCCA could reasonably have concluded the TCCA's denial on the merits of Davis's fourteenth claim herein (which corresponds with his fourteenth claim in his state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Davis's trial, state direct appeal, and state habeas proceedings. Under the AEDPA, Davis's fourteenth claim herein does not warrant federal habeas corpus relief.

### b. *De Novo* Review

Moreover, for the same reasons discussed in Section VII.D.4. above, after independently reviewing the entire record now before the Court, this Court concludes after *de novo* review that Davis's fourteenth claim herein fails to satisfy either prong of *Strickland*. Even under a *de novo* standard, Davis's fourteenth claim herein does not warrant federal habeas relief.

### VIII. REQUEST FOR A FEDERAL EVIDENTIARY HEARING

Davis requests that this Court afford him an evidentiary hearing where he can present new evidence in support of his claims for federal habeas relief. Insofar as Davis's claims in this federal habeas corpus proceeding were disposed of on the merits during the course of his direct appeal or state habeas corpus proceedings, he is not entitled to a federal evidentiary hearing to develop new evidence attacking the state appellate or state habeas court's resolution of his claims unless he can satisfy 28 U.S.C. § 2254(e)(2). *Shinn v. Ramirez*, 596 U.S. 366, 371-72 (2022) (in all but the extraordinary situations listed in § 2254(e)(2), a federal habeas petitioner who failed to develop facts in state court supporting his claim is not entitled to an evidentiary hearing in federal court). Likewise, a federal habeas petitioner is not entitled to an evidentiary hearing for the purpose of showing that his failure to develop facts in the state court was the result of the ineffective assistance of his state habeas counsel. *Id.*, 596 U.S. at 381-91.

Under AEDPA, the proper place for development of the facts supporting a federal habeas claim is the state court. *See Harrington*, 562 U. S. at 103 ("Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding."); *Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding AEDPA clearly places the burden on a federal habeas petitioner to raise and litigate as fully as possible his federal claims in state court).

Where a petitioner's claims have been rejected on the merits, further factual development in federal

court is effectively precluded by virtue of the Supreme Court's holding in *Cullen v. Pinholster*,

563 U. S. 170, 181-82 (2011):

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court.

Thus, Davis is not entitled to a federal evidentiary hearing on any of his claims which were

rejected on the merits by the state courts, either on direct appeal or during his state habeas corpus

proceedings. *Shinn*, 596 U.S. at 371; *Halprin v. Davis*, 911 F.3d 247, 255 (5th Cir. 2018) ("If a

claim has been adjudicated on the merits by a state court, a federal habeas petitioner must

overcome the limitation of § 2254(d)(1) on the record that was before that state court." (quoting

*Cullen*, 563 U.S. at 185)). Furthermore, factual development of a claim in federal court is

permissible only when the federal habeas court first determines the new evidence to be developed

could properly be considered in light of the restrictions on evidentiary development imposed by

the AEDPA. *Shoop v. Twyford*, 596 U.S. 811, 819-21 (2022).

With regard to any new factual allegations, new evidence, or new legal arguments Davis

presents in support of any of the claims for which this Court has undertaken *de novo* review, he is

likewise not entitled to an evidentiary hearing. In the course of conducting *de novo* review of

Davis's claims, except for those assertions that are refuted by the state courts records now before

this Court, this Court has assumed the factual accuracy of (1) all the specific facts alleged by Davis

in support of his claims for relief and (2) any documents he has presented in support of those

claims. Even when the truth of all of Davis's new factual allegations supporting those claims is assumed, his claims do not warrant federal habeas relief. *See Schriro v. Landrigan*, 550 U. S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). Thus, Davis is not entitled to an evidentiary hearing in this Court with regard to any of his claims for which this Court has undertaken *de novo* review.

## IX. CERTIFICATE OF APPEALABILITY

Under AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under § 2254, the petitioner must obtain a Certificate of Appealability ("CoA"). *Miller-El v. Johnson*, 537 U.S. 322, 335-36 (2003); 28 U.S.C. § 2253(c)(2). Likewise, under AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002) (holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted). In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted. *Crutcher*, 301 F.3d at 658 n.10; 28 U.S.C. § 2253(c)(3).

A CoA will not be granted unless a petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Miller-El v. Johnson*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). To make such a showing, the petitioner need *not* show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree)

the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard*, 542 U.S. at 282; *Miller-El*, 537 U.S. at 336. This Court is required to issue or deny a CoA when it enters a final Order such as this one adverse to a federal habeas petitioner. *Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts*.

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim. "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484). In a case in which the petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* whether this Court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484 (holding when a district court denies a habeas claim on procedural grounds, without reaching the underlying constitutional claim, a CoA may issue only when the petitioner shows that reasonable jurists would find it debatable whether (1) the claim is a valid assertion of the denial of a constitutional right and (2) the district court's procedural ruling was correct). This court did not dispose of any of Harris's federal habeas corpus claims on procedural grounds. This court addressed the merits of all of Harris's federal constitutional claims.

Reasonable minds could not disagree with this Court's conclusions that (1) regardless of whether reviewed under the AEDPA or a *de novo* standard of review, all of Davis's complaints of

ineffective assistance by his trial counsel (i.e., claims one, two three, five, seven, eight, thirteen, and fourteen) fail to satisfy the prejudice prong of *Strickland*; (2) Davis's *ex post facto* claim (i.e., claim four) is foreclosed by *Teague* as well as without arguable merit; (3) Davis's claims based on alleged violations of state statutes and state evidentiary rules (i.e., claims six, ten, eleven, and twelve) are all without arguable merit; (4) Davis's complaint of improper prosecutorial jury argument (i.e., claim nine) is without arguable merit; and (5) Davis's conclusory claim of a lack of state trial court jurisdiction (i.e., claim fifteen) is also without arguable merit.  Davis is not entitled to a CoA from this Court.

Accordingly, it hereby **ORDERED** that (1) all relief requested in either Davis's original petition (ECF no. 1), his Memorandum in support of his petition (ECF no. 4), or his Reply Brief (ECF no. 19) is **DENIED**; (2) Davis is **DENIED** a Certificate of Appealability with regard to all of his claims for relief; and (3) all pending motions are **DISMISSED** as moot.

**SIGNED December 13, 2024.**

_____
**REED O'CONNOR**
**UNITED STATES DISTRICT JUDGE**